***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Taylor. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed on August 16, 1999.
3. The employer is self-insured with Gallagher Bassett Services acting as servicing agent/third party administrator.
4. On August 16, 1999, plaintiff-employee suffered a compensable injury by accident when he received an electrical shock.
5. On August 16, 1999, plaintiff's average weekly wage was $853.67, yielding a compensation rate of $560.00.
6. The parties stipulated into evidence as Stipulated Exhibit 1, a packet of plaintiff's medical records.
7. The parties stipulated into evidence as Stipulated Exhibit 2, a Form 21, Agreement for Compensation for Disability which was approved by the Commission on July 28, 2000.
 ***********
The parties entered into a Form 21, Agreement for Compensation which was approved by the Commission on July 28, 2000. This Agreement constitutes an Order of the Commission. This Agreement indicates that plaintiff sustained a compensable injury by accident on August 16, 1999 resulting in an electrical shock. The Agreement provides that plaintiff's average weekly wage is $853.67 and undertook to pay compensation to plaintiff at the rate of $560.00 per week for one week.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 37 year old male, born November 1, 1964. Plaintiff had been employed by defendant-employer for approximately eight years as an electrician in the maintenance department maintaining equipment which builds trucks.
2. On August 16, 1999, plaintiff was attempting to troubleshoot a Huck Unit. His left elbow came into contact with the electrified fuse box, and he was exposed to 480 volts of electricity. Plaintiff remained in contact with the energy source for several seconds and then fell from the platform. Plaintiff lost consciousness and his heart and breathing stopped briefly.
3. Plaintiff was taken by ambulance to Davis Medical Center where he was hospitalized. Plaintiff's complaints at that time were tingling and tightness in his hand and mild neck stiffness.
4. Plaintiff was treated by Dr. Mark Williamson and after observation was discharged on August 17, 1999. While plaintiff was in the hospital, his myoglobin values were 1,381, which was significantly higher than the normal value of approximately 96.5. These myoglobin levels showed that plaintiff had significant muscle tissue damage from the electrical shock.
5. Plaintiff returned to Dr. Williamson on August 20, 1999 complaining of bilateral arm aching and tingling and dysesthesias as well as neck pain since his injury. At that time, Dr. Williamson ordered a MRI of the cervical spine and bilateral nerve conduction studies and continued plaintiff out of work. Plaintiff was also referred by Dr. Williamson to Dr. Jerome Watson, a physiatrist.
6. On August 26, 1999, plaintiff presented to Dr. Watson complaining that "his arms quit working on him" and were numb and weak. Nerve conduction studies revealed bilateral carpal tunnel syndrome and mild peripheral neuropathy.
7. Plaintiff was written out of work for approximately one week following his compensable injury and thereafter worked light duty through August 30, 1999.
8. On December 15, 1999, plaintiff returned to Dr. Williamson and continued to complain of episodic tingling in the arm.
9. Plaintiff has a prior history of a herniated disc at L5-S1 which has been treated by Dr. Mark Lyerly, a board-certified neurosurgeon. Plaintiff's low back condition was not related to his employment.
10. Plaintiff has a hobby of racing dirt bikes cross-country. Plaintiff has been involved in this activity for approximately eight years. While plaintiff has had wrecks on his dirt bikes, he has not been involved in any wreck that injured his neck or required medical treatment to his neck. Plaintiff has had wrecks where he broke his ankle and where he injured his ribs.
11. On September 12, 2000, plaintiff reported to Dr. Lyerly following a motorcycle accident. At that time, plaintiff had jumpy reflexes and Dr. Lyerly described him as myelopathic. Myelopatric changes include findings below the area of the spinal cord which is compressed or damaged which includes hyperactive reflexes, difficulty with bowel/bladder function, imbalance, numbness (hypesthesia). Plaintiff also presented with clonus, a sign of a brain injury or spinal cord injury. Dr. Lyerly ordered a MRI of plaintiff's cervical and thoracic spine at that time.
12. In Dr. Lyerly's opinion plaintiff's September 14, 2000 MRI revealed gliosis or injury at C 1-2-3. Gliosis is an indication of injury, and in Dr. Lyerly's opinion, was consistent with electrical shock damage to nerves.
13. Thereafter, Dr. Lyerly reviewed the MRI of plaintiff's spine taken on August 28, 1999 approximately two weeks following his electrical shock injury. In Dr. Lyerly's opinion, the gliosis abnormality was also present in the same spot on those MRIs.
14. In Dr. Lyerly's opinion, the changes in plaintiff's spinal cord on August 28, 1999, approximately two weeks after his compensable electrical shock and on September 14, 2000 were the same and were the result of damage caused from plaintiff's electrical shock at work.
15. Dr. Lyerly was further of the opinion that plaintiff's symptoms in the neck, torso, abdomen, legs and arms including bladder dysfunction, numbness, weakness, tingling, electric shock sensations and altered balance as well as headaches were caused by plaintiff's compensable electric shock injury.
16. On February 21, 2002, plaintiff underwent a third set of MRIs which no longer showed abnormal signals indicating cervical cord damage at C 1-2-3.
17. Plaintiff had sustained a gunshot wound to his neck in a hunting accident in 1982. This injury was approximately eighteen years prior to plaintiff's compensable injury and was primarily a soft tissue injury that did not cause lasting problems in his neck. Dr. Lyerly was of the opinion that had plaintiff's gunshot wound to the neck been in any way related to plaintiff's symptoms or the changes on his MRIs, they would not have improved on February 21, 2002.
18. Dr. Lyerly was of the opinion that since plaintiff's February 21, 2002 MRI showed no abnormality, that plaintiff should not expect to need surgery in the future for this condition or expect any significant decline in his condition in the future. However, Dr. Lyerly was of the opinion that plaintiff would experience persistent changes in the disruption of some of his nerve fibers and would continue to experience these symptoms which he was having and continues to have.
19. Dr. Lyerly is of the opinion that plaintiff has reached maximum medical improvement and retains a 15% permanent partial disability of his back due to permanent nerve damage.
20. Plaintiff was sent by defendant-employer for an independent medical evaluation by Dr. St. Clair on March 14, 2001. Dr. St. Clair is a doctor of occupational medicine with an extensive practice in the Cabarrus County area. Dr. St. Clair saw plaintiff on one occasion. Dr. St. Clair was of the opinion that if plaintiff continues to have numbness and tingling in his arm, particularly in his left arm, that this would be consistent with plaintiff's electrical shock injury and would be related to his work-related electrical shock. Dr. St. Clair was of the opinion that the MRIs did not reveal the gliosis changes identified by Dr. Lyerly. Dr. St. Clair was of the opinion that other than any symptoms of numbness and tingling which plaintiff might be experiencing in his arms, plaintiff's other symptoms are not related to his electrical shock and may be related to plaintiff's traumas in non-work related activities.
21. Although Dr. St. Clair was of the opinion that most of plaintiff's symptoms were more likely related to his multiple episodes of trauma from motorcycle accidents, he did not discuss with plaintiff the particularities of these motorcycle incidents or exactly when they occurred in relation to plaintiff's electrical shock injury. Dr. St. Clair further agreed that plaintiff did have electrical nerve injury and that continuing arm symptoms would most likely be related to that injury. Dr. St. Clair did not assign a disability rating to those continuing symptoms.
22. Dr. St. Clair was of the opinion that plaintiff had a 0% permanent partial disability of the spine.
23. On April 29, 2002, plaintiff underwent an independent medical examination on the behest of defendant, which was performed by Dr. Steven Gudeman, a board-certified neurosurgeon. Dr. Gudeman evaluated plaintiff on one occasion. Dr. Gudeman reviewed plaintiff's MRIs and believed that they showed no abnormality. Dr. Gudeman was of the opinion that plaintiff's complaints were related to trauma in his several motorcycle wrecks rather than his electrical shock injury. Dr. Gudeman was of the opinion that plaintiff had no significant neurologic sequelae from his electrical shock injury and retained a 0% permanent partial disability of the back. Although Dr. Gudeman was of the opinion that plaintiff's injuries were more likely caused by his motorcycle traumas, Dr. Gudeman was not aware of when these wrecks occurred or what type of injuries plaintiff sustained.
24. At the time of the hearing, plaintiff continued to work his regular duties with defendant-employer. However, at the time of the hearing, plaintiff continued to experience severe headaches which affect his vision approximately two to three times per month, numbness and tingling in his arms, insomnia, tremors in his entire body but especially in his arms and hands which are sometimes worse than others, occasional trouble with his vision resulting in difficulty focusing, problems with urination and sexual dysfunction.
25. Greater weight is given to the opinions of Dr. Lyerly, plaintiff's treating physician.
26. On August 16, 1999, plaintiff sustained a compensable injury by accident when he sustained an electrical shock.
27. As a direct and proximate result of plaintiff's compensable injury, plaintiff has sustained multiple physical problems including severe headaches, numbness and tingling in his arms, insomnia, tremors in his entire body but especially in his arms and hands, periodic difficulty in focusing his vision, difficulty with urination and sexual dysfunction.
28. Plaintiff has reached maximum medical improvement with regard to his electrical shock injuries.
29. As a direct and proximate result of plaintiff's compensable injury, plaintiff retains a 15% permanent partial impairment to the back.
30. Plaintiff earned an average weekly wage of $853.67 yielding the maximum weekly compensation rate for 1999 of $560.00 per week.
31. Plaintiff is entitled to permanent partial disability compensation as a result of his compensable injury at the rate of $560.00 per week for a period of 45 weeks.
32. The treatment which plaintiff has received for his electrical shock injuries was reasonably necessary and designed to effect a cure, provide relief and lessen the period of plaintiff's disability, and plaintiff is entitled to have defendant provide the same.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On August 16, 1999, plaintiff sustained a compensable injury by accident when he sustained an electrical shock.
2. As a direct and proximate result of plaintiff's compensable injury, plaintiff has sustained multiple physical problems including severe headaches, numbness and tingling in his arms, insomnia, tremors in his entire body but especially in his arms and hands, periodic difficulty in focusing his vision, difficulty with urination and sexual dysfunction.
3. Plaintiff has reached maximum medical improvement with regard to his electrical shock injuries.
4. As a direct and proximate result of plaintiff's compensable injury, plaintiff retains a 15% permanent partial impairment to the back.
5. Plaintiff earned an average weekly wage of $853.67 yielding the maximum weekly compensation rate for 1999 of $560.00 per week.
6. Plaintiff is entitled to permanent partial disability compensation as a result of his compensable injury at the rate of $560.00 per week for a period of 45 weeks.
7. The treatment which plaintiff has received for his electrical shock injuries was reasonably necessary and designed to effect a cure, provide relief and lessen the period of plaintiff's disability, and plaintiff is entitled to have defendant provide the same.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay permanent partial disability compensation to plaintiff at the rate of $560.00 per week for a period of 45 weeks.
2. Defendant shall provide plaintiff treatment for plaintiff's electrical shock injury received to date and any medical treatment from Dr. Lyerly in the future as long as the same is reasonably necessary and designed to effect a cure, give relief or lessen plaintiff's disability as caused by his compensable August 16, 1999 electrical shock injury.
3. Defendant shall pay the costs, including an expert witness fee for Dr. Gudeman, which is hereby approved, in the amount of $385.00.
This the ___ th day of ___, 2004.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER